

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-1998

# Gulla v. N Strabane

Precedential or Non-Precedential:

Docket 97-3302

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gulla v. N Strabane" (1998). *1998 Decisions.* Paper 134.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/134

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3302

RONALD GULLA

v.

NORTH STRABANE TOWNSHIP; NORMA WINTERMYER,
individually and in her capacity as North Strabane
Township Supervisor; ALAN A. AXELSON, M.D.;
LINDENCREEK ASSOCIATES; T.A. WARD
CONSTRUCTORS ADVANCED BUILDING DEVELOPMENT

RONALD GULLA and EVELYN GULLA*
(*Pursuant to Rule 12(a), F.R.A.P.),
        Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Civil Action No. 96-cv-01232)

Argued December 12, 1997

Before: NYGAARD and ALITO, Circuit Judges, and
DEBEVOISE, District Judge*

(Opinion filed: June 8, 1998)

_____

*The Honorable Dickinson R. Debevoise, Senior United States District
Judge for the District of New Jersey, sitting by designation.

Peter M. Suwak (Argued)
Pete's Surplus Building
P.O. Box 1
Washington, PA 15301
 Attorney for Appellants

George R. Farneth, II
Zimmer Kunz, P.C.
3300 USX Tower
Pittsburgh, PA 15219
 Attorney for Appellees
 Lindencreek Associates and Alan
 A. Axelson, M.D.

John M. Giunta
C. Leon Sherman & Associates, P.C.
Sixteenth Floor, Grant Building
Pittsburgh, PA 15219-2203
 Attorney for Appellee
 Norma Wintermyer in her
 individual capacity

Daniel P. McDyer
Paul G. Mayer, Jr.
Anstandig, McDyer, Burdette &
Yurcon, P.C.
707 Grant Street
600 Gulf Tower
Pittsburgh, PA 15219
 Attorneys for Appellee
 Advanced Building Development

Paul J. Walsh III
Shannon E. Elby (Argued)
Summers, McDonnell, Walsh &
 Skeel
707 Grant Street
Suite 2400 Gulf Tower
Pittsburgh, PA 15219
 Attorneys for Appellees
 North Strabane Township and
 Norma Wintermyer in her official
 capacity

        Charles D. Sheehy
        Charles D. Sheehy & Associates
        1600 One PPG Place
        Pittsburgh, PA 15222
         Attorney for Appellee
         T.A. Ward Constructors

OPINION OF THE COURT

ALITO, Circuit Judge:

Appellants Ronald and Evelyn Gulla challenge the
dismissal of their federal civil rights claims based on the
Rooker-Feldman doctrine. Because we conclude that the
Gullas' claims are not barred by that doctrine, we reverse.

I.

The Gullas own a home in North Strabane Township,
Pennsylvania.1 In April 1993, Lindencreek Associates
("Lindencreek") applied to the Township for permission to
subdivide and develop land adjacent to the Gullas'
property. The Township's Board of Supervisors approved
Lindencreek's proposal on June 28, 1994.

The Gullas were first informed of the Board's approval in
July 1994 when Lindencreek notified them that
construction of the subdivision would interfere with their
spring, which was located on land within the new
subdivision, and the right-of-way that conveyed spring
water to the Gullas' home. Shortly after Lindencreek gave
this notice, its contractors T.A. Ward Constructors ("Ward")
and Advanced Building Development ("ABD"), began
excavating on the subdivision property. This excavation
destroyed the Gullas' spring and a water line in their right-
of-way. The Gullas demanded that Lindencreek and its

_____

1. Because the district court dismissed the Gullas' claims for lack of
subject matter jurisdiction, we draw these facts from the allegations in
the Gullas' complaint. See Liberty Lincoln-Mercury v. Ford Motor Co., 134
F.3d 557, 571 n.18 (3d Cir. 1998); Kachmar v. Sungard Data Systems,
Inc., 109 F.3d 173, 175 (3d Cir. 1997).

contractors restore the spring and water line, but Lindencreek did not make the requested repairs.

The Gullas appealed the Board of Supervisors' approval of the subdivision to the Court of Common Pleas of Washington County. In that court, the Gullas alleged that the actions and policies of the Township "violate[d] due process and equal protection provisions of the state and United States Constitutions." The Gullas further alleged that the Board's decision to approve the Lindencreek subdivision was "invalid, arbitrary, capricious, an abuse of discretion and contrary to law." The Court of Common Pleas affirmed the Board's approval of the subdivision and dismissed the Gullas' appeal. The court held that, under Pennsylvania law, the Gullas lacked standing to challenge the subdivision approval. Alternatively, the court concluded that the Township followed the applicable ordinances and statutes governing the subdivision process. The Gullas appealed this decision to the Commonwealth Court of Pennsylvania, which affirmed the lower court's decision. The Gullas filed an allocatur petition with the Supreme Court of Pennsylvania, which granted review. That appeal is pending.

After the Commonwealth Court issued its opinion, the Gullas brought suit in federal district court. The Gullas alleged that Lindencreek, its owner Alan Axelson, Ward, ABD, North Strabane Township, and Norma Wintermyer (a member of the Township Board of Supervisors) violated their civil rights as guaranteed by the Due Process, Equal Protection, and Just Compensation Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The Gullas also asserted pendent state-law causes of action against all of the defendants except the Township.

The defendants to the Gullas' federal suit moved to dismiss. The district court granted this motion because it concluded that the Gullas' federal claims were barred by the Rooker-Feldman doctrine. The district court declined to exercise jurisdiction over the Gullas' remaining state-law claims and therefore dismissed those claims without prejudice. The Gullas appealed these dismissals to this court.

4

II.

Since the grant of a motion to dismiss for lack of subject matter jurisdiction is subject to plenary review, FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 839-40 (3d Cir. 1996), we must independently decide whether the Rooker-Feldman doctrine bars the Gullas' federal claims. In so doing, we are mindful of our obligation to preserve the avenues of direct review established by Congress. Asarco, Inc. v. Kadish, 490 U.S. 605, 622-23, 109 S.Ct. 2037, 2048-49 (1989). Under 28 U.S.C. S 1257, state court litigants who have appealed an adverse judgment through the state system may seek review in the United States Supreme Court; the lower federal courts may not sit in direct review of the decisions of a state tribunal. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314-15 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150 (1923); Guarino v. Larsen, 11 F.3d 1151, 1156-57 (3d Cir. 1993); Port Auth. Police Benev. Ass'n v. Port Auth., 973 F.2d 169, 178 (3d Cir. 1992).

While the rule barring our appellate review of state decisions is easily stated, the test for determining whether a particular litigant seeks such direct review is more complex. Under the Rooker-Feldman doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with such a state adjudication. FOCUS, 75 F.3d at 840; Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992). A federal claim is inextricably intertwined with a prior state adjudication if

> the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. Accordingly, to determine whether Rooker-Feldman bars [plaintiff's] federal suit requires determining exactly what the state court held. . . . If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably

5

> intertwined and the district court has no subject
> matter jurisdiction to hear the suit.

FOCUS, 75 F.3d at 840 (omissions and alterations in original) (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 n.1 (8th Cir. 1995)).

As this passage from FOCUS indicates, thefirst step in a Rooker–Feldman analysis is to determine "exactly what the state court held." Id. Accordingly, we begin by examining the judgments of the Pennsylvania courts.

In their first court filing, the Gullas alleged that the Township's actions in considering and approving the Lindencreek subdivision "violate[d] the due process and equal protection provisions of the state and United States Constitutions" and that the Board of Supervisors' decision was "invalid, arbitrary, capricious, an abuse of discretion and contrary to law." App. at 67a–71a. The Court of Common Pleas responded to these allegations by first addressing the issue of the Gullas' standing. The court concluded that, under Pennsylvania law, adjacent landowners with a private interest in the property of a proposed subdivision do not have standing to challenge the approval of the subdivision. See Gulla v. North Strabane Township, Civ. Div. No. 94–3933 at 2–4 (C.P. of Washington County Sep. 18, 1995). Since the Gullas alleged an injury to private rights that they received by deed, the court held that they could not challenge the subdivision proceedings. See id. Additionally, the court analyzed and rejected the Gullas' claim that the Township and Lindencreek failed to comply with the ordinances governing the subdivision process. The court emphasized that, even if the Township's ordinances had been violated, the Gullas lacked standing because "the Township is not permitted to consider the private rights of individuals before granting subdivision approval" and because the Township's environmental regulations are "unaffected by the alleged private water rights of individuals." Id. at 4–5. Despite this conclusion that the Gullas lacked standing, the court substantively analyzed whether the defendants complied with the Township's ordinances. The court concluded that the Township followed the procedures for approving a subdivision and that Lindencreek's final subdivision plan

6

contained all of the information necessary to comply with the Township's development and environmental ordinances.

If the Court of Common Pleas had closed its opinion with the analysis just discussed, we would easily conclude that the opinion does not invoke the Rooker–Feldman doctrine to bar the Gullas' federal claims. "Rooker–Feldman applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." FOCUS, 75 F.3d at 840. The essence of the Court of Common Pleas' opinion is that, under Pennsylvania law, the Gullas lack standing to challenge the subdivision process. Since the Gullas' standing to bring their federal claims is solely a matter of federal law, the district court clearly could consider the Gullas' due process, equal protection, and Fifth Amendment takings claims without disturbing the state court's conclusion. However, at the end of its discussion about whether Lindencreek's plan complied with the Township's environmental ordinance, the state court added: "Because Lindencreek Associated complied with all federal, state, and local requirements, [the Gullas'] assertion of error, based solely on private rights is inappropriate in the instant action." Gulla, Civ. Div. No. 94-3933 at 5.

The defendants collectively assert that this concluding statement summarily rejected the Gullas' due process and equal protection claims on the merits. If this contention is true, then we must conclude that the state court's opinion bars at least some of the Gullas' federal claims. If a state court considers and rejects a constitutional claim on the merits, a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of Rooker–Feldman's jurisdictional bar. Indeed, in Feldman, the state court adjudicated the plaintiff's constitutional claims summarily and did not refer to each of the claims when it issued its per curiam order. Nevertheless, the state court decision was sufficient to invoke the jurisdictional bar because "Feldman had raised his legal claims in a petition to the court and the court had issued an overarching decision . . . thus implicitly denying all of his legal claims." Guarino, 11 F.3d at 1159-60.

7

However, upon careful scrutiny of the Court of Common Pleas' opinion, we conclude that the court did not expressly or implicitly adjudicate the Gullas' constitutional claims. The Gullas' claims were procedurally styled as an appeal of the Township's approval of the Lindencreek subdivision, and the court's ruling is clearly based on its conclusion that the Gullas lack standing to bring such a suit. Under Pennsylvania law, the court could not resolve the merits of the Gullas' claims if they lack standing to bring their suit. See, e.g., Nye v. Erie Ins. Exch., 470 A.2d 98, 100 (Pa. 1983); In re T.J., 699 A.2d 1311, 1314 (Pa. Super. Ct. 1997); Building Indus. Assoc. v. Manheim Township, 1998 WL 169270, at *6 (Pa.Commw. Ct. April 14, 1998) ("when [the Court of] Common Pleas determined that[the plaintiff] lacked standing . . . , it no longer possessed jurisdiction over the case to address any of the merits."); Commonwealth v. Desiderio, 698 A.2d 134, 140 (Pa. Commw. Ct. 1997). In light of this well-established principle, we believe that the court's opinion cannot be cast as an adjudication of the Gullas' constitutional claims. Moreover, to the extent that the state court commented upon the merits, it limited its discussion to the question of whether the Township failed to follow the express provisions of its subdivision and environmental ordinances. It is in the context of this discussion that the court stated that Lindencreek "complied with all federal, state, and local requirements." Gulla, Civ. Div. No. 94-3933 at 5. Read in context, we believe this statement refers to compliance with technical zoning and environmental regulations, and not to a conclusion that the Township's actions satisfied the requirements of the federal Due Process and Equal Protection Clauses.2

_____

2. We recognize that the inclusion of the word"federal" in this quote could imply that the court considered and rejected the Gullas' federal constitutional claims. However, in the same sentence the court reaffirmed that the Gullas' "assertion of error, based solely on private rights is inappropriate in the instant action." Gulla, Civ. Div. No. 94-3933 at 5. In light of this conclusion that the Gullas lacked standing to bring their suit, we conclude that the court did not issue an overarching decision on the merits of the Gullas' claims. Moreover, even if this statement could be cast as an adjudication of the Gullas' federal claims, it could not invoke the Rooker-Feldman bar since the commentary on the merits followed a conclusion that the Gullas' lacked standing. See Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 475 (3d Cir. 1997).

Likewise, the decision of the Commonwealth Court does not bar the Gullas' federal claims under the Rooker-Feldman doctrine. The Commonwealth Court held that the Court of Common Pleas "correctly found that the Gullas did not have standing to appeal the subdivision approval process." Gulla v. North Strabane Township, No. 2696 (Pa. Commw. Ct. April 9, 1996). The Commonwealth Court therefore affirmed the lower court's dismissal of the Gullas' claims. See id. Since the Commonwealth Court's reasoning parallels that discussed above, we conclude that its decision is not inextricably intertwined with the Gullas' federal claims.

As an alternative basis for affirmance, the defendants suggest that the decisions of the Court of Common Pleas and the Commonwealth Court preclude the Gullas' federal action under traditional principles of claim and issue preclusion. In Feldman, the Supreme Court noted that a litigant who raises some but not all of its constitutional claims in state court may be precluded from raising those claims in any other forum. See Feldman, 460 U.S. at 482 n.16, 103 S.Ct. at 1302 n. 16. Likewise, we have stated that "[w]hen a litigant expects that a court is willing to consider its legal claims, raises some of those claims, and has those claims adjudicated, it makes sense to apply normal principles of claim preclusion to hold that the litigant has waived any legal claims he or she fails to raise which have arisen from the same transaction." Guarino, 11 F.3d at 1160.

In this case, we conclude that the Gullas are not precluded from bringing their federal claims because the state court could not and did not adjudicate the merits of their constitutional claims. Rather, the state court noted that the Gullas lacked standing to raise their constitutional claims in an appeal of the Board's subdivision decision. Since the Gullas could not obtain an adjudication of their claims in state court, they are not precluded from raising their constitutional claims in the federal forum. See, e.g., Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 475 (3d Cir. 1997) (quoting 18 Charles A. Wright, et al., Federal Practice and Procedure S 4421, at 207-08 ("If afirst decision is supported by findings that deny the power of the court to

9

decide the case on the merits and by findings that reach the merits, preclusion is inappropriate as to thefindings on the merits.")); Guarino, 11 F.3d at 1161-62 & n.8 ("A litigant suffers no real harm by attempting to raise his or her constitutional claim in state court: if the state court refuses to address the constitutional claim, the litigant can then raise the claim in federal court without any jurisdictional, abstention, or collateral estoppel problems."); Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992) (stating that the Rooker-Feldman doctrine and claim preclusion will only apply when litigants have had a "full and fair opportunity to litigate their . . . claim in state court.").

Since we conclude that the Gullas are not precluded from bringing their federal claims, we need not address their assertion that the Rooker-Feldman doctrine does not bar their claim against Norma Wintermyer because she was not a party to the state suit in her individual capacity. Likewise, we do not consider the Gullas' argument that their federal claims escape the Rooker-Feldman bar because they are allegedly based on newly discovered facts. We also decline to address the argument that the Gullas failed to state a claim against ABD and Ward. If the Gullas failed to state a claim against these defendants, the district court may have to consider whether it will allow them to amend their pleadings. Accordingly, we should allow the district court to address this argument in the first instance. See, e.g., Hudson United Bank v. Litenda Mortgage Corp., 1998 WL 173101, at *7-8 (3rd Cir. Apr. 15, 1998).

For the foregoing reasons, we vacate the order of the district court entered on April 24, 1997 and remand for further proceedings consistent with this opinion.

10

NYGAARD, Circuit Judge, dissenting.

I dissent because I believe the federal and state claims are inextricably intertwined. Hence, the majority's holding contravenes the Rooker-Feldman doctrine by permitting a federal court to review and potentially contradict a ruling of a state court of general jurisdiction.

The gravamen of Gulla's claim, which is contained in his appeal in the Court of Common Pleas of Washington County, Pennsylvania and in his complaint in the Federal Court for the Western District of Pennsylvania, is essentially that he was not given the notice to which he alleges he was entitled by law concerning subdivision proceedings in North Strabane Township.

Specifically, in his Notice of Appeal from the decision of the North Strabane Township Board of Supervisors, Gulla complained that he received no notice of the subdivision process. Gulla alleged that in doing so the supervisors violated Section 304 of the Township subdivision and land development ordinance, which, among other things, dictates the process it must follow when it considers a major subdivision request. He averred that as a result, the Township "violated due process and equal protection provisions of the state and the United States Constitutions." In the Federal District Court for the Western District of Pennsylvania, he again alleged that "no notice was ever given to the Gullas concerning the subdivision process." And that as a result, "defendants have violated the civil rights of the plaintiffs."

The Court of Common Pleas held that under the ordinance Gulla was not entitled to notice of the proceedings; consequently none of his rights were violated when he was not given notice; he was simply not a person aggrieved by the law. In so ruling, the judge used the phrase "appellants lack standing to challenge the subdivision proceedings." Nonetheless, Gulla received a full adjudication of his rights in the state court because his entitlement to notice, hence any violations thereof, were inextricably intertwined with a decision that he was neither a person entitled to notice, nor aggrieved by the law. Gulla admits that the state court found "that state procedures

11

were not violated." (Appellant's Br. at 3.) That is the essence and basis of his claim to notice of the subdivision proceedings, and which was affirmed on appeal to the Commonwealth Court. By concluding that the district court may rehear the matter, we are allowing a federal court to improperly sit in secondary judgment on a matter already decided by a state court. If, on remand, the district court decides that Gulla was entitled to notice, it will be determining that the decision of the Court of Common Pleas was wrong and in so doing void its ruling -- something it is not empowered to do.

This is not a typical matter in which, because the plaintiff "lacked standing" to present his claim, his claim was neither heard nor decided on the merits. Here, the merits are inextricably intertwined with the "standing" decision and the state courts' rulings that Gulla is not entitled by the ordinance to receive notice. Gulla has received his day in state court, and I think the district court was correct when it refused to give him another one in federal court. I would affirm.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12